UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEHINDE WOFFORD,

        Plaintiff,        Case No. 1:16-cv-1145

v.        Honorable Paul L. Maloney

UNKNOWN AUSTIN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Kehinde Wofford presently is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility, though the actions about which he complains occurred while he was housed at the Oaks Correctional Facility (ECF). He sues Correctional Officers (unknown) Austin and (unknown) Iverson.

Plaintiff alleges that he is a devout Muslim in the Nation of Islam. On July 3, 2016, Plaintiff was provided his Ramadan meal to break his fast. Plaintiff contends that the meal "was in disarray and cross-contaminated and haram (forbidden) to consume by [P]laintiff's sincerely held religious beliefs." (Compl., ECF No. 1, PageID.3.) Plaintiff brought his meal to Defendant Austin and showed Austin the spilled food. Austin laughed at Plaintiff and said, "[J]ust eat the damn meal[.]" Plaintiff refused to eat the main meal. Austin called Defendant Iverson from the food service department. Iverson stated, "I'm not going to give you another bag so eat the one you have or []I'm going to write you a disobeying a direct order misconduct." (*Id.*) Plaintiff explained that consuming the meal would violate his beliefs. Both Defendants allegedly laughed and told Plaintiff, "You shouldn't have decided to fast or do Ramadan; maybe next time you'll think twice before fasting." (*Id.*) Plaintiff asked Defendants why they were punishing him for observing Ramadan and being a Muslim. Austin responded, "I didn't tell you to become a [M]uslim Wofford." (*Id.*) Defendants also yelled at Plaintiff, advising him to "become a Christian or anything besides a [M]uslim because [P]laintiff would be less of a target." (*Id.*) Later that day, Correctional Officer Lee provided Plaintiff a complaint form against food service, which Plaintiff completed and returned to Lee. Plaintiff also filed a grievance the following day against both Defendants.

Plaintiff alleges that, as a result of Defendants' actions, his connection with Allah was broken and he was prevented from successfully completing Ramadan, because the main purpose of Ramadan is peace and requires abstaining from quarreling. He contends that Defendants' actions violated the free-exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000(a)(1)(b). Plaintiff also alleges that Defendants' treatment of him as a Muslim was dissimilar to their treatment of prisoners practicing other religions, in violation of the Equal Protection Clause.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment & RLUIPA

Plaintiff alleges that Defendants violated the First Amendment and RLUIPA by refusing to provide Plaintiff with a replacement meal when his Ramadan meal was cross-contaminated by spillage from one part of the meal onto another. He also alleges that Defendants violated his rights under First Amendment and RLUIPA by harassing him on the basis of his religion.

While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the

atheist, or the adherent of a non-Christian faith . . . ."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989). To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). RLUIPA's institutionalized-persons provision alleviates government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). Although RLUIPA does not define "substantial burden," courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citations omitted). A "substantial burden" requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one

that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

A single instance of providing a cross-contaminated meal does not amount to a violation of either the First Amendment or the RLUIPA. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated instances of errors in the provision of a kosher meal do not state a claim under the First Amendment or the RLUIPA); *see also Johnson v. Wilkinson*, 229 F.3d 1152, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (unpublished table decision) (holding that a prisoner's allegations about "random and isolated interference with [his] mail" did not rise to the level of a First Amendment violation). Nor is there any evidence that the isolated problem with Plaintiff's meal was willful. *See Colvin*, 605 F.3d at 293 (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (affirming the dismissal of an inmate's claim that kosher utensils were contaminated because, despite evidence that prison officials might have "imperfectly implemented the kosher requirements, or were even negligent," there was "no basis to conclude that any of the defendants deliberately contaminated the kosher utensils"). Given the isolated nature of the contaminated Ramadan meal and the lack of any evidence indicating that the provision of the contaminated meal was intentional,[1] Plaintiff fails to state a claim based on his receipt of one contaminated meal.

---

[1] Even if Defendants Austin and Iverson acted intentionally in failing to remedy Plaintiff's complaint about his meal, Plaintiff alleges no facts suggesting that the meal was intentionally contaminated. Defendants' mere failure to correct the problem does not amount to active conduct that is actionable in a § 1983 claim. *See Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008) (holding that claimed constitutional violation under § 1983 must be based upon active unconstitutional behavior); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's allegations concerning Defendants' verbal harassment also fail to state a First Amendment claims. Courts routinely have rejected claims of constitutional violations based solely on verbal harassment. *See, e.g., Shuaib v. Siddum*, No. 88–86126, 1988 WL 86126, at *1 (6th Cir. 1988) (holding that prison officials' refusal to address prisoners by their newly adopted legal names does not violated the religion clauses of the First Amendment) (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987) (holding that verbal harassment is insufficient to support an Eighth Amendment claim)); *Hailes v. Collier*, No. 2:12–cv–687, 2014 WL 2515581, at *5 (S.D. Ohio June 3, 2014) (holding that verbal harassment is insufficient to state a claim under § 1983 for violation of any constitutional amendment, including the First Amendment religion clauses) (citing *Siggers v. Renner*, 37 F. App'x 138, 141 (6th Cir. 2002), and *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012)); *Mizori v. Miller*, No. 5:09–cv–10824, 2009 WL 777640, at *2 (E.D. Mich. Mar. 20, 2009) (holding that verbal harassment was insufficient to support a claim of religious discrimination under the First Amendment). Especially in light of the minimal nature of the harassment alleged, Plaintiff fails to state a claim for violation of his religious rights under the First Amendment.

Further, Defendants' brief verbal harassment of Plaintiff on a single day falls short of demonstrating the sort of "substantial burden" proscribed by the RLUIPA. Instead, the brief harassment amounts to only an incidental burden on his ability to practice his religion. *See Lyng*, 485 U.S. at 450; *Hobbie*, 480 U.S. at 141; *Midrash Sephardi, Inc.*, 366 F.3d at 1226-27; *Civil Liberties for Urban Believers*, 342 F.3d at 761. Plaintiff was not prevented from practicing his religion. Instead, his religious observance was made inconvenient on a single day as a result of Defendants' comments. *See Midrash*

*Sephardi, Inc.*, 366 F.3d at 1226-27 (holding that, to be substantial, the burden must place more than an inconvenience on religious exercise).

### B. Equal Protection

Plaintiff contends that he was discriminated against based on his sincerely held religious beliefs, in violation of the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Plaintiff's allegation of discriminatory treatment is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff utterly fails to allege that similarly situated

persons of other religions had never received a meal that was imperfectly compliant with their religious tenets. Further, Plaintiff does not allege that either Austin or Iverson was responsible for cross-contaminating his meal. Instead, he alleges only that they did not respond effectively to his complaint about the meal. Such a failure to act does not constitute active conduct that is actionable in a § 1983 claim. *See Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300.

Moreover, allegations of verbal harassment and abusive language do not give rise to an equal protection claim. *Jones v. Porter*, No. 99–1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level.") (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *Price v. Lighthart*, No. 1:10–cv–265, 2010 WL 1741385, at *2 (W.D. Mich. Apr. 28, 2010) (finding that an allegation that a prison official used racial slurs, standing alone, does not violate the Fourteenth Amendment's guarantee of equal protection) (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 & n. 61 (5th Cir. 2003)). Plaintiff's complaint contains no allegations that Plaintiff was subjected to a denial or deprivation in violation of the Equal Protection Clause. As a result, the complaint fails to state an Equal Protection Clause claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A Judgment consistent with this Opinion will be entered.


Dated:  October 27, 2016            /s/Paul L. Maloney  
                                            Paul L. Maloney  
                                            United States District Judge